Gilvie HUBBARD et ux., Appellants,

v.

SUNILAND FURNITURE COMPANY, Appellee.

No. 13069.

Court of Civil Appeals of Texas.

Galveston.

May 9, 1957.

Rehearing Denied June 6, 1957.

Thomas J. Stovall, Jr., Houston, for appellants.

Kirchheimer & Kirchheimer, Houston, Theo. R. Kirchheimer, Houston, of counsel, for appellee.

GANNON, Justice.

This suit was filed by Suniland Furniture Company against Gilvie Hubbard and wife, Mrs. Gilvie Hubbard, to recover a balance of $4,741.93 on an account for furniture and house furnishings alleged to have been delivered to defendants, totaling $8,204.42, upon which had been credited $3,462.49, leaving due the balance sued for.

The petition alleges that the merchandise was sold by plaintiff to defendants at their special instance and request, and that "* * * the goods, wares and merchandise purchased by Defendants were 'necessaries' within the meaning of the State Statutes made and provided; * * *." In the alternative, the petition alleges:

"Plaintiff would allege that the Defendant Gilvie Hubbard ratified the purchase of the items shown on Plaintiff's Exhibit 'A' and attached hereto after the same had been placed in his home and, in the alternative, acquiesced in the purchase of the said merchandise set forth in Plaintiff's Exhibit 'A' and attached hereto and thereby became liable for the payment of the same; in the alternative, Plaintiff would allege that Defendants, Gilvie Hubbard and wife, Mrs. Gilvie Hubbard, at the time the merchandise shown on Exhibit 'A' and attached hereto was delivered to the home of Defendants, were husband and wife and were living together, that the said merchandise as shown on Exhibit 'A' and attached hereto was delivered to the home of Defendants and has been used by them ever since; that Defendant Gilvie Hubbard has not returned said merchandise or caused the same to be returned, and, wherefore, the said Gilvie Hubbard has adopted the purchases made by Defendants or either of them, and by reason of such adoption is liable to Plaintiff for the balance due on said account; in the alternative, Plaintiff would allege that Defendant Mrs. Gilvie Hubbard at the time the purchases of the merchandise shown on Exhibit 'A' were made was acting as the agent of Defendant Gilvie Hubbard, and with his authority purchased the merchandise shown on Exhibit 'A' and attached hereto; * * *."

The defendant Hubbard and wife filed a joint answer, including certain special exceptions, none of which were presented to the court, and all of which were therefore waived. Among other abandoned special exceptions was one based on the failure of the petition to allege that the defendant husband had failed and refused to provide his wife and family with the necessaries furnished by plaintiff.

The following was alleged by the defendants in their answer to the merits: Gilvie Hubbard specially denied that he or anyone acting under his authority purchased any of the items shown on the account. Mrs. Hubbard pled her coverture and that none of the items purchased were for the benefit of her separate estate. The defendant Gilvie Hubbard alleged that he had no knowledge of the purchases until some agent or employee of the plaintiff called him on the 'phone and advised of the unpaid balance due. This he alleged was on June 20, 1953, the merchandise having been delivered to his home between April of 1952, and May of 1953. Defendant Gilvie Hubbard pled that in this 'phone conversation he informed plaintiff that he had not authorized the purchases and had no knowledge of same; that he would not accept the merchandise, and that he tendered the same back to plaintiff by instructing plaintiff to send its truck to pick up all of said merchandise. He also pled his repudiation of the purchases made by his wife. Gilvie Hubbard also specially denied that he ever authorized his wife to purchase any of the items shown on the account, and that each and every item thereon was purchased without his knowledge or consent and in the face of express instructions that no merchandise of any kind was to be purchased from the plaintiff. Gilvie Hubbard alleged that the merchandise was delivered to his home at a time when he was out of the city and that he was later given to understand that all of the merchandise was bought for cash and from various stores other than plaintiff. Defendant expressly pled that he had never ratified, acquiesced in or adopted any of the purchases. Gilvie Hubbard further pled that the merchandise was sold solely on the credit of Mrs. Hubbard, but that the purchases did not benefit her separate estate. Additionally defendant Gilvie Hubbard denied that any of the items purchased

and reflected in the account were necessaries within the meaning of the law.

The case was tried before a jury and was submitted on special issues, in response to which the jury found: (1) that all of the items of merchandise sued for by plaintiff were "necessaries"; (2) that the defendant Gilvie Hubbard acquiesced in the purchase of the merchandise sued for; (3) that "after the carpet transaction" Mrs. Hubbard informed plaintiff that her husband would not permit her to charge anything further to him but that she, Mrs. Hubbard, would pay for the purchases if her husband did not, and (4) that the plaintiff did not sell the merchandise involved "looking to Mrs. Hubbard's credit alone."

After the coming in of the verdict, the plaintiff moved for judgment upon the pleadings, the evidence, and the verdict of the jury, which motion the court granted and rendered judgment against the defendants, Hubbard and wife, jointly and severally, for a total of $5,393.90, with interest at the legal rate until paid, and for costs.

Mrs. Hubbard does not appeal, but Gilvie Hubbard has perfected an appeal and seeks reversal of the judgment upon the following three points of error:

### Point One

Where jury found merchant had received notice that husband would not pay for merchandise sold to wife, the court erred in entering judgment against husband where there was no pleading, proof or issue inquiring whether the husband failed to provide necessaries for his family.

### Point Two

Where jury found merchant sold goods to wife after receiving notice that husband would not pay for same, upon wife's promise to pay same, jury's further finding that merchant did not look to wife's credit alone is contrary to law and the facts.

### Point Three

The court erred in entering judgment against husband in favor of merchant selling goods to wife where the jury's answer in finding acquiescence on part of the husband is in conflict with jury's findings on Issues Nos. 5 and 6, which constitute a legal defense to merchant's suit.

Appellant's first point of error is multifarious but we have considered it and find it without merit.

We are unable to see the materiality, in a suit for necessaries, of the fact that the seller has received notice that the husband will not pay for them. We know of no principle of law, and have been referred to none, upon which a husband may relieve himself of liability for necessaries by notifying potential sellers that he will not pay for such items. While it is a necessary part of a plaintiff's case for necessaries to show that the husband failed to provide same for his family, still here we have a finding of the jury that all of the articles sued for were necessaries in fact and proof from Mrs. Hubbard, which is not disputed by Mr. Hubbard or any other witness, of Mr. Hubbard's refusal to provide such necessaries. It is true that no special issue was submitted to the jury inquiring if Mr. Hubbard had failed to provide the "necessaries" for his family. But there was no dispute in the evidence that he had failed and refused to do so. Having submitted to the jury the question of whether or not the articles involved were necessaries, the court was fully authorized to find on the undisputed facts in support of the judgment rendered against Mr. Hubbard and as a component part of plaintiff's legal theory of recovery as for necessaries, that Mr. Hubbard had failed and refused to provide them for his family.

The absence of express pleading by plaintiff of the husband's failure to provide these necessaries is not indispensable to support the judgment. Mr. Hubbard excepted to the plaintiff's pleadings on the

ground of plaintiff's failure to include such an allegation in its petition but did not present or press the exception. It was therefore waived. The general demurrer has been abolished in our State, and our Rules provide that all defects in pleading, whether of form *or of substance,* not specifically pointed out by motion or exception in writing and seasonably brought to the attention of the court, shall be deemed to be waived. See Rule 90, Texas Rules of Civil Procedure, reading as follows:

> "General demurrers shall not be used. Every defect, omission or fault in a pleading either of form or of substance, which is not specifically pointed out by motion or exception in writing and brought to the attention of the Judge in the trial court before the instruction or charge to the jury or, in a non-jury case, before the rendition of judgment, shall be deemed to have been waived by the party seeking reversal on such account; provided that this rule shall not apply as to any party against whom default judgment is rendered."

█ Point of Error No. 2 is apparently based upon the jury's finding that Mrs. Hubbard advised plaintiff that she would pay for the articles *if her husband did not.* This is not a finding of an unconditional and an unqualified promise upon the part of the wife to pay for the merchandise— of a purchase solely on her own credit. On the other hand, the wife's undertaking is found to be expressly conditioned upon the failure of her husband to pay. We see no conflict between the jury finding that Mrs. Hubbard promised to pay for the articles "if her husband did not" and the jury's further finding that the articles were not sold looking solely to the credit of Mrs. Gilvie Hubbard. The answers to the two special issues and the verdict as a whole imply the contrary, namely, that the plaintiff was to look to Mrs. Hubbard's credit only if her husband did not pay. In our opinion the verdict in the light of the record as a whole fully implies that in

selling the merchandise the plaintiff looked, in substantial measure at least, to Mr. Hubbard's credit or financial responsibility, possibly in reliance in part on the theory that the merchandise constituted "necessaries" for which Mr. Hubbard would be liable.

█ Coming finally to the contention made under appellant's third point, we fail to see any conflict in the jury's finding that Mr. Hubbard acquiesced in the purchase of the merchandise and its findings in response to other special issues that plaintiff was informed by Mrs. Hubbard that Mr. Hubbard would not permit her to charge anything further to him and that she, Mrs. Hubbard, would pay for the articles if her husband did not. The finding on acquiescence, although it does bolster plaintiff's case, is not necessary to plaintiff's recovery. So, even if there were the conflict claimed, it would be immaterial since plaintiff's recovery is amply supported on the jury's finding that the articles involved were necessaries and the implied finding of the court on the undisputed proof that the husband failed to provide same. However, our study of the record convinces us that the finding on acquiescence is based upon conduct of Mr. Hubbard subsequent to whatever time Mrs. Hubbard may have informed plaintiff Mr. Hubbard would not permit her to charge anything further to him. No doubt such conversation took place, if it did take place, before any of the articles involved in the suit were purchased. As bearing upon the finding of Mr. Hubbard's acquiescence in the purchases, we quote the following testimony of Mrs. Hubbard in respect to Mr. Hubbard's conduct at a time after the items involved were actually in his home:

> "Q. When he came back [from New Braunfels] and found these items in the house did he have anything to say? A. Yes.

> "Q. What did he say? A. He said he wouldn't have them, and that was just before the Christmas party and I

had moved the old divan upstairs into the living room and had this new one sent out, and the light fixture, and I told him if he simply wouldn't have them I would send them back and cancel the party—we would let the furniture go for a while—and he didn't say anything, so we went on and kept it."

The record shows that the furniture and furnishings involved were kept by the defendants for the Christmas party and, in fact, long past it, without any effort on the part of Gilvie Hubbard to return them prior to the telephone conversation in June of 1953, above referred to.

Finding no error in the matters assigned by appellant, the judgment of the trial court is affirmed.

Affirmed.